UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MOHIT GAUBA,
        Plaintiff,

        v.                                          No. 3:12-cv-1713 (SRU)

TRAVELERS RENTAL CO., INC.,
        Defendant.

RULING AND ORDER

DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

Mohit Gauba filed this action in the Connecticut Superior Court for the Judicial District

of Hartford against Travelers Rental Company, Inc. ("Travelers"), alleging that he was

unlawfully terminated on the basis of his race/national origin, that he was subjected to a hostile

work environment, and that Travelers retaliated against him for complaining about that hostile

work environment, all in violation of the Connecticut Fair Employment Practices Act

("CFEPA"), Conn. Gen. Stat. §§ 46a-60, *et seq.*  Notice of Removal 5–6 (Pl.'s Compl.) (doc. 1).

Travelers removed this case to the U.S. District Court for the District of Connecticut on

the basis of this court's diversity jurisdiction, 28 U.S.C. § 1332.  Notice of Removal 1–2.

Travelers moved for summary judgment, arguing that Gauba had failed to meet his evidentiary

burden on all of his claims.  Def.'s Mot. Sum. J. 1 (doc. 24).  I granted that motion after oral

argument, concluding that Gauba's *prima facie* discrimination claim was time-barred and that

even if the alleged discriminatory incidents were not time-barred, Gauba had failed to present

evidence of actions taken that gave rise to an inference of discrimination (doc. 30).  I also held

that Gauba had failed to provide sufficient evidence from the relevant look-back period to prevail

on his hostile work environment and retaliation claims.  *Id.*  Gauba's counsel moved for leave to

supplement the record, which I allowed.  Plaintiff's counsel filed a motion for reconsideration of

Gauba's hostile work environment and retaliation claims (doc. 31).  Pl.'s Mot. Reconsideration

2.  Gauba has not moved for reconsideration of my ruling granting summary judgment for

Travelers on his *prima facie* race/national origin discrimination claim, and I do not revisit my

earlier ruling on that claim.  *Id.*

     For the reasons provided in this ruling and those previously stated on the record during

oral argument, and based on the entire record before me, Gauba's motion for reconsideration is

denied.


I.     **Standard of Review**

     A motion for reconsideration is held to a strict standard, and such motions "will generally

be denied unless the moving party can point to controlling decisions or data that the court

overlooked—matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Motions

for reconsideration will not be granted where the party seeks to relitigate an issue that has

already been decided.  *Id.*  A motion for reconsideration may be granted, however, when there is

(1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need

to correct clear error or prevent manifest injustice.  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation

Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller &

Edward H. Cooper, Federal Practice & Procedure § 4478).

     During oral argument, Gauba's counsel moved for leave to supplement the record and file

additional briefing to set forth an argument under a "cat's paw theory" of liability (doc. 29).  *See

Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1189 (2011) (cat's paw theory); *Nagle v. Marron*, 663

F.3d 100, 117–18 (2d Cir. 2011); *Rajaravivarma v. Bd. of Ct. State Univ. Sys.*, 862 F. Supp. 2d

127, 149 (D. Conn. 2012).[1]  I granted that motion and allowed Gauba's counsel to "supplement the record with evidence already in existence by filing a motion for reconsideration."  Minute Entry & Order (doc. 30).  Accordingly, I construe Gauba's motion for reconsideration as supplemental briefing on Travelers' original motion for summary judgment (doc. 24) under Rule 56 of the Federal Rules of Civil Procedure, and I evaluate Gauba's arguments in accordance with the standard of review for a motion for summary judgment rather than the stricter standard governing motions for reconsideration.

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965 (1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party").  When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but must present sufficient probative

---

1.  Gauba's counsel did not raise an argument under the cat's paw theory in any of her submissions, either before or after oral argument, thus waiving that argument.

evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## II.   Background

Tim Shea, then a site manager for Travelers, hired Gauba as a rental agent at Travelers'

Bradley International Airport location on November 20, 2005.  Def.'s Local R. 56(a)1 Statement

¶ 2.  Shea left Travelers in May 2006, and Ellen Abare became Gauba's direct supervisor and

site manager.  *Id.* ¶ 3.  In his Complaint and opposition brief to Travelers' motion for summary

judgment, Gauba alleged that beginning in 2009, Abare subjected him to disparate treatment

regarding shift scheduling, overtime, vacation leave, and disciplinary action.  Compl. ¶ 7.  Gauba

further alleged that Ellen Abare became openly racist after her husband joined Travelers, and

that she and her husband frequently called Gauba racist epithets including "towel head," "camel

jockey," and "sand nigger."  Compl. ¶ 6; Pl.'s Opp'n Br. 1 (doc. 25).

Around March through May 2010, Gauba contacted his operations manager, Renee

Ciaramella, and his district manager, William DelloRusso, to report the slurs and other allegedly

abusive behavior.  Gauba Aff. ¶ H (May 30, 2014) (doc. 25).  Around July 2010, two months

after his conversations with DelloRusso, Abare resumed her use of racially-derogatory terms and

other abusive conduct.  *Id.* ¶ H.  Abare and her husband began to call Gauba a "snitch," in

reference to his complaint to DelloRusso.  *Id.*  Nearly a year later, around May 2011, Gauba

contacted DelloRusso, again, requesting his assistance in resolving Gauba's scheduling concerns.

Gauba noted that he had been subjected to adverse treatment and abusive practices for "going on

four years."  Def.'s Local R. 56(a)1 Statement ¶¶ 43–47.  DelloRusso replied that he would be

on vacation and that Gauba could raise his concerns when DelloRusso returned the following

week.  *Id.* ¶ 46.  Based on the record, it appears that that follow-up conversation did not take

place.  Aside from the noted statements from his affidavit, Gauba provided no evidence that he

notified DelloRusso or any other manager of Abare's racially-discriminatory statements.

5

On June 7, 2011, Shea rejoined Travelers as site manager.  *Id.* ¶ 47.  Beginning June 16, 2011, Abare began medical leave and was not present at Gauba's work site.  *Id.*  That same month, all employees but Gauba received new uniforms.  *Id.* ¶ 48.  On June 21, Shea issued a written warning to Gauba for violation of Travelers' policies.  Def.'s Mot. Summ. J., Ex. M.  On July 11, 2011, a customer complained that Gauba had tricked her into purchasing insurance by representing that such insurance was required under Travelers' rental policies.  *Id.*, Ex. N.  On July 12, a customer submitted a written complaint stating that Gauba had been rude to her and had tried to convince her to upgrade her reservation.  *Id.*  On July 13, a customer complained that Gauba was rude to her on the phone and had hung up on her.  *Id.*  On July 14, 2011, Shea attempted to discuss the customer complaints with Gauba. *Id.*, Ex. O ¶ 7 (Shea Affidavit).  Shea noted that he did not intend to fire Gauba, but after Gauba continued to argue about the accuracy of the complaints, Shea terminated Gauba.  *Id.*; Compl. ¶ 10; Def.'s 56(a)1 Statement ¶ 60.

Gauba filed a complaint alleging race and national origin discrimination with the Connecticut Commission on Human Rights and Opportunities on July 19, 2011, and he received a Release (right to sue) on September 24, 2012.  Compl. ¶ 2.  He timely filed suit in Hartford Superior Court on November 5, 2012.  Notice of Removal, Ex. 1 & 2.

## III.  Discussion

### A.  Statute of Limitations and Cognizable Discriminatory Events

Because Connecticut employment discrimination law is modeled on federal law, the Connecticut Supreme Court looks to federal law for guidance on the interpretation of state law. *Conn. v. Comm'n on Human Rights & Opportunities*, 211 Conn. 464, 469–70 (1989). Connecticut requires that parties exhaust their administrative remedies before filing suit by

submitting a complaint to the CHRO or to the U.S. Equal Employment Opportunities

Commission ("EEOC") within 180 days of the occurrence of an alleged CFEPA violation.

Conn. Gen. Stat. § 46a-82(f) ("Any complaint filed pursuant to this section must be filed within

one hundred and eighty days after the alleged act of discrimination").  If the plaintiff's complaint

alleges that the employer engaged in discrete acts of discriminatory conduct, he may only seek

adjudication on those allegedly discriminatory acts that "occurred" within the relevant look-back

period—in this case, 180 days from the date he filed his administrative complaint.  *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  If the plaintiff alleges a continuing

violation of his rights, he may only seek review of those allegedly discriminatory acts that took

place in the 300 days preceding the day he filed his administrative complaint.  *Id.*; *see also*

*Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) ("under the

continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would

have been barred by the statute of limitations as long as an act contributing to that hostile

environment [took] place within the statutory time period.") (internal citations and marks

omitted, alteration in original).

      Gauba's pleadings and motion papers did not allege a continuing violation of his rights,

nor did he offer evidence of a continuing violation.  Instead, Gauba complained of discrete

employment actions that he believed constituted adverse actions under the CFEPA.

Accordingly, the 180-day look-back period applies to his claims, and that look-back period

includes events that occurred between January 20, 2011 and July 19, 2011.[2]

      Gauba identified five events that fell within the look-back period.  He alleged that he

contacted DelloRusso by phone in May 2011 to complain about his shift schedule and Abare's

---

2.   If Gauba's claims set forth a continuing violation, then the relevant look-back period would have run from
September 22, 2010 through July 19, 2011.

use of racial slurs.  Compl. ¶ 8.  Shortly thereafter, Travelers removed Abare from its Windsor

Locks location, and it reinstated/rehired Tim Shea as site manager for that location.  Local R.

56(a) Statement ¶ 47.  Gauba alleged that after Shea's rehiring, Gauba was subjected to three

adverse actions: (1) he was the only employee who did not receive a new uniform; (2) he was

subjected to harsher discipline for alleged violations of Travelers' policies than other, similarly-

situated white employees; and (3) he was terminated without warning or cause.  Compl. ¶¶ 9–10;

Gauba Aff. ¶¶ I-K, R (May 30, 2014).

All of Gauba's allegations of discriminatory conduct occurred outside the relevant look-

back period and were time-barred.  Consequently, matters that occurred in 2009 and spring 2010

could not be used to support or undermine Gauba's claims.

B.  Hostile Work Environment

To prevail on a claim for hostile work environment, a plaintiff must show that: (1) the

harassment was so severe or pervasive that it altered the conditions of the plaintiff's employment

and created an abusive work environment, *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21

(1993); (2) the conduct occurred because of his membership in a protected class, *Richardson v.*

*New York Department of Correctional Service*, 180 F.3d 426, 440 (2d Cir. 1999), *abrogated in*

*part on other grounds by Burlington Northern and Santa Fe Railway Company v. White*, 548

U.S. 53, 63 (2006) *as recognized by Kessler v. Westchester County Department of Social*

*Services*, 461 F.3d 199, 207 (2d Cir. 2006); and (3) a specific basis exists for imputing the

conduct that created the hostile environment to the employer, *Dutch v. Jakubek*, 588 F.3d 757,

762 (2d Cir. 2009).  *See also Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir.

2014).  In support of his claim, a plaintiff "must demonstrate either that a single incident was

extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted'

8

to have altered the conditions of [his] working environment." *Alfano v. Costello*, 295 F.3d 365,

374 (2d Cir. 2002) (internal citation omitted); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d

Cir. 2010); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1 (1998); *Howley v.*

*Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000).

      The standard for determining if an environment is hostile or abusive is both objective and

subjective—it asks if a reasonable person would find the environment hostile or abusive, and it

takes into account the victim's subjective perception of the environment. *Harris*, 510 U.S. at

21–22; *Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004). To determine whether an

environment is sufficiently hostile, courts must consider the totality of the circumstances,

including the severity, frequency and degree of abuse, as well as whether the alleged abuse is

physically threatening and humiliating and unreasonably interferes with an employee's work

performance. *Id.* at 21; *Moll*, 760 F.3d at 203 (citing *Alfano*, 294 F.3d at 374). For hostile work

environment claims based on race or national origin, there must be a "steady barrage of

opprobrious racial comments" to create a hostile work environment. *Schwapp v. Town of Avon*,

118 F.3d 106, 110 (2d Cir. 1997). Slurs or phrases that are "mere[ly] offensive" are insufficient

to meet this burden. *Harris*, 510 U.S. at 23; *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S.

75, 81 (1998).

      In support of his claim, Gauba offered an affidavit that restated the allegations in his

complaint. That affidavit included the assertion that his former manager, Abare, and her

husband called him racial slurs, but Gauba could only identify one occurrence within the relevant

look-back period. He noted that Abare and other employees frequently implied that he would be

terminated or that they would exact revenge upon him, but again, those incidents occurred

outside of the applicable look-back period. Gauba Dep. Tr. 121:18–122:14 (Sept. 3, 2013);

Def.'s Mot. Summ. J. Br., Ex. F.  Moreover, Gauba's description of the time period in which

Abare allegedly made racially-derogatory comments was noticeably vague.  All of the times that

Abare used racial slurs on dates that Gauba could remember fell beyond the 180-day statute of

limitations.[3]

Gauba also failed to introduce any evidence that Abare's discriminatory conduct

impacted Gauba's subjective perspective of his environment or changed the conditions of his

employment.  Although Gauba indicated that he worried about bullying and losing his job, his

evidentiary submissions and pleadings did not indicate that the alleged discriminatory

harassment interfered with his ability to work or his ability to return to work.  And although

Gauba referred to Abare's actions as "abusive," the incidents he described in his complaints to

management were unrelated to his membership in a protected class and did not mention racial

discrimination.  Instead, he submitted evidence of several passive-aggressive notes from Abare

to all employees at Travelers and one specifically directed to Gauba, and he noted that Abare had

used the "silent treatment" with him when she was displeased.  Only before the look-back period

and again after his termination did Gauba claim that Abare had used racial slurs when referring

to or speaking to him.  When evaluated under the totality of the circumstances, Gauba's

evidentiary submissions were vague and conclusory, and they did not demonstrate that his work

environment was objectively or subjectively hostile.

Gauba also failed to demonstrate that a specific basis existed to impute liability to his

employer for the allegedly hostile work environment.  Even assuming for the sake of argument

that Gauba's treatment was sufficiently hostile to raise a genuine issue of material fact, he did

---

3.   Gauba argues that the 300-day look-back period for a continuing violation should apply to his hostile work
environment claim.  Even when using a 300-day timeframe, Gauba only identifies one incident of discriminatory
commentary, purportedly occurring either in November or December 2010.  Pl.'s Interrog. Responses 8–11.  A
single incident in which a manager used a racial slur does not meet the standard of severity required to create a
genuine issue of material fact with respect to Gauba's hostile work environment claim.

not offer evidence from the applicable look-back period that he had notified his employer of his allegedly hostile work environment.  Gauba affirmed that he had complained to DelloRusso regarding Abare's racist comments in his affidavit.  Gauba's emails and text messages with DelloRusso from the applicable look-back period, however, indicated that Gauba submitted complaints regarding workplace policies.  None of those complaints included an allegation of racially-disparate or discriminatory treatment.  Instead, Gauba described a general culture of bullying that impacted all workers, regardless of membership in a protected class.  Def.'s Mot. Summ. J., Exs. F, H, I, J, O.  Significantly, Gauba did not indicate whether Shea, the manager who ultimately terminated Gauba, contributed to or ameliorated Gauba's allegedly hostile work environment.

Gauba attempts to trigger the 300-day look-back period for a continuing violation by arguing that his interrogatory responses were not properly credited and by submitting his CHRO complaint for the first time in this litigation.  I considered Gauba's interrogatory responses during oral argument, noting that Gauba's statements regarding the frequency and pervasiveness of Abare and her husband's racially-derogatory comments were insufficiently specific to raise a genuine issue of material fact.  *Cf. Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 22 (2d Cir. 2014); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 105–06 (2d Cir. 2011) (upholding a district court's granting of summary judgment for the defendant, noting that the plaintiff's opposition "relied almost entirely on her own testimony, in the form of an affidavit" and characterizing the plaintiff's statements as "self-serving").  When asked to estimate the dates upon which he was subjected to racially discriminatory comments or treatment, Gauba only offered dates that fell outside of the 180-day and a 300-day look-back periods.  Pl.'s Interrog. Responses 8–11.

Gauba attempts to bootstrap his claim by referring for the first time to his CHRO complaint, which deploys conclusory language to allege that he was subjected to a continuous CFEPA violation.  Pl.'s Mot. Reconsideration, Ex. 1, at 1.  Gauba's CHRO complaint offers no new evidence.  Even assuming the statements in his CHRO complaint are admissible, those statements are cumulative and reflect statements Gauba previously submitted in his affidavit accompanying his opposition to Travelers' motion for summary judgment.  Those submissions do not set forth information that escaped consideration during the motion hearing.  As noted at oral argument, Gauba's vague and conclusory statements provided an insufficient evidentiary basis for raising a genuine issue of material fact, see *Rojas*, 660 F.3d at 105, and accordingly, Gauba's submissions, initial and supplemental, are together inadequate to avoid summary judgment.

C.  Retaliation

To establish a prima facie claim for retaliation, a plaintiff must demonstrate (1) membership in a protected class; (2) participation in a protected activity known to the defendant; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2003).  A plaintiff may establish a causal connection by "showing that the protected activity was closely followed in time by the adverse [employment] action."  *Gorman-Bakos v. Cornell Coop Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).  After establishing his *prima facie* case for CFEPA retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the employer is able to articulate such a reason, the plaintiff must offer evidence that the employer's stated reason for its actions is a pretext for unlawful discrimination.  *Id.* at 804.

12

Gauba meets the first and third elements of a CFEPA retaliation claim—he is a member of a protected class, and he suffered an adverse employment action (termination). Gauba failed to provide evidence to satisfy the second and fourth elements of his retaliation claim. Gauba alleged that his termination was retaliatory in that it sought to punish him for reporting his claims of racial discrimination to DelloRusso. Gauba Aff. ¶ H. Thus, his retaliation claim was subject to the 180-day look-back period for discrete acts of racial discrimination. *Harris v. N.Y.C.*, 186 F.3d 243, 250 (2d Cir. 1990); *see also Morgan*, 536 U.S. at 114; *cf. Smith v. N.Y.C. Dept. of Educ.*, 524 F. App'x 730, 732–33 (2d Cir. 2013) (summary order) (noting that "reliance on the continuing violation doctrine to avoid dismissal of [retaliation] claims is misplaced, as each of the allegedly retaliatory events was a discrete action, not an 'ongoing policy' of retaliation.").

Gauba testified that he complained to DelloRusso around May and July 2010. Gauba Aff. ¶¶ G, H. With the exception of his interrogatory responses, Gauba did not submit evidence indicating that he notified DelloRusso of racial discrimination. Instead, Gauba's emails and deposition testimony indicated that he contacted DelloRusso regarding shift assignments. Local R. 56(a)1 Statement ¶ 40. Importantly, Gauba did not offer evidence connecting Abare's conduct to Shea, the manager who ultimately terminated Gauba.

Shea rejoined Travelers in a supervisorial capacity in June 2011, after Abare's allegedly discriminatory conduct took place. Local R. 56(a)1 Statement ¶¶ 42, 47. Shea fired Gauba on July 14, 2011, over a year after Gauba engaged in allegedly protected activity, *id.* ¶ 60, yet Gauba argued that the Court should infer a causal connection between the allegedly protected activity and his termination based solely on temporal proximity. *See Gorman-Bakos*, 252 F.3d at 554–55 (noting that the Second Circuit has not adopted a "bright line" rule on the "outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between

the exercise of a federal constitutional right and an allegedly retaliatory action."); *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *Cody v. Cnty. of Nassau*, 345 F. App'x 717, 719 (2d Cir. 2009) (summary order) (defining the outer bounds of temporal proximity anywhere between two months to one year after a plaintiff engages in protected activity). Gauba did not offer evidence indicating that Shea was aware of his complaint or that Shea terminated Gauba for engaging in protected activity. Shea had not been employed at Travelers' Hartford location for the entire period of time within which Gauba alleged he was subjected to discriminatory conduct and had engaged in protected activity. Further, Gauba offered no evidence that he had disclosed to Shea that he had complained to DelloRusso or any other Travelers manager regarding unlawful discrimination on the basis of race or national origin. *See, e.g.*, Pl.'s Interrog. Responses 2, 10, 11–12 (noting that when Shea was not employed at Travelers, Gauba informed Shea of Abare's allegedly racially discriminatory statements but did not disclose that he had complained to Travelers' managers). The absence of evidence that Shea was aware of protected activity by Gauba breaks any causal connection between the protected activity and Gauba's termination.

Finally, even if Gauba's evidentiary submissions were sufficient to raise a genuine issue of material fact with respect to his CFEPA retaliation claim. Gauba failed to produce evidence to rebut Travelers' claim that it dismissed him for legitimate, non-discriminatory reasons, and he failed to show that the stated nondiscriminatory reasons for his termination were pretextual.

Travelers submitted several exhibits of customer complaints regarding Gauba as well as employment documents of Gauba's alleged violation of Travelers' policies for the time period leading up to his termination. Local R. 56(a)1 Statement ¶¶ 50–59; Def.'s Mot. Summ. J., Exs. M, N, O. In response, Gauba contested the accuracy or truth of those complaints. Pl.'s Local R.

56(a)2 Statement ¶¶ B(6)–B(9).  When evaluating whether an employer's deliberative process was unlawful, a district court examines the employer's motivations.  *McPherson v. N.Y.C. Dept. of Educ.*, 457 F.3d 211, 216, 2d Cir. 2006) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).  The accuracy of the conclusions reached through that process, or the truthfulness of the customer complaints directed at the plaintiff, are immaterial to determining whether the employer was motivated by unlawful, discriminatory animus.  Travelers is not required to prove that its customers' complaints were true; it need only show that it reasonably relied on those complaints, not Gauba's protected activity, when making its decision.  *Graham v. Long Isl. R.R.*, 230 F.3d 34, 44 (2d Cir. 2000); *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1338 (2d Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998).  Because Gauba has not offered evidence to rebut Travelers' assertion that Shea terminated Gauba's employment for legitimate, non-discriminatory reasons, his retaliation claim fails.

## IV.  Conclusion

Gauba has failed to provide evidence that raises a genuine issue of material fact with respect to his hostile work environment and retaliation claims, and he has not offered evidence to overcome the *McDonnell Douglas* burden-shifting analysis with respect to his retaliation claim. Accordingly, Gauba's motion for reconsideration is denied.  The Clerk shall enter judgment for Travelers and close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 5th day of March 2015.

    /s/ STEFAN R. UNDERHILL
    Stefan R. Underhill
    United States District Judge